Jan C. HAGOPIAN

v.

Erin L. HAGOPIAN.

No. 2005–305–Appeal.

Supreme Court of Rhode Island.

Jan. 25, 2007.

Lauren E. Jones, Providence.

David E. Revens, Warwick.

## ORDER

This case came before the Supreme Court on December 11, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the parties' memoranda, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The facts in this case largely are not in dispute. The plaintiff, Jan C. Hagopian (Jan or plaintiff), and the defendant, Erin L. Hagopian (Erin or defendant), were married on February 17, 1991. They have two children: a son, born on August 11, 1992, and a daughter, born on July 1, 1998. The marriage was not a happy union. According to the trial justice, because of the animus between their parents, the children were "forced to live in a virtual war zone[.]" On April 6, 2005, a divorce was granted based on irreconcilable differences that had caused the irremediable breakdown of the marriage.

A decision pending entry of final judgment was issued by the trial justice, who equitably distributed the parties' marital assets in accordance with G.L. 1956 § 15–5–16.1.[1] She awarded defendant forty percent of the net equity in the marital domicile and a fifty-fifty division of the rest of the marital assets. The allocation of plaintiff's unvested and noncontributory pension from the Rhode Island State Police

---

1. General Laws 1956 § 15–5–16.1, entitled "Assignment of property" says in pertinent part:

   "(a) In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:

   " * * *

   "(12) Any factor which the court shall expressly find to be just and proper."

was a hotly contested issue. Under G.L. 1956 § 42–28–22,[2] Jan, who joined the state police in 1987[3] at age twenty-six, became eligible for retirement on September 6, 2006, after twenty years of service. Retirement is mandatory after twenty-five years of service, in 2011, when plaintiff will be fifty-one years of age. *Id.*

The trial justice found that Jan's pension was subject to equitable distribution and that plaintiff must commence payment of the marital portion upon his eligibility for retirement, whether or not he elects to retire at that time. This finding was based on an erroneous interpretation of our caselaw. The trial justice found as follows:

"As to Plaintiff's pension, this Court's preferred method of distribution regarding pensions that have yet to vest is to grant this Defendant her fifty (50%) percent of the marital portion of the pension if, as and when he receives same. The case law in this State is very clear that she will begin to receive same when the Plaintiff becomes eligible for retirement, and not when he chooses to retire. The Court cites the *Furia* case. If it is his choice to work past the age of eligibility, then he will be under an order to begin paying her share out of his income." [4]

The trial justice then proceeded to set forth the percentage each party was awarded of the remaining marital assets and to determine the issues of support, custody, and visitation of the children. The plaintiff appealed and now argues that the trial justice erred in her belief that she lacked the discretion to order her preferred method of distribution of the marital portion of plaintiff's pension, and, in doing so, committed an error of law.

Before this Court, Jan argues that the trial justice misapplied our holding in *Furia v. Furia*, 638 A.2d 548, 553 (R.I.1994) (*Furia I*), when she ordered that payments commence "when [Jan] *becomes eligible* for retirement, and not when he chooses to retire." [5] (Emphasis added.)

---

**2.** General Laws 1956 § 42–28–22 provides in pertinent part:

"(A) Whenever any member of the state police has served for twenty (20) years, he or she may retire therefrom or he or she may be retired by the superintendent with the approval of the governor, and in either event a sum equal to one-half (1/2) of the whole salary for the position from which he or she retired determined on the date he or she receives his or her first retirement payment shall be paid him or her during life. " * * *

"(H) Any other provision of this section notwithstanding, any member of the state police other than the superintendent of state police, who has served for twenty-five (25) years or who has attained the age of sixty-two (62) years, whichever shall first occur, shall retire therefrom."

**3.** Jan, in his prebriefing statement, asserts he joined the state police in 1986; the trial justice in her "Decision Pending Entry of Final Judgment," finds he joined in 1987.

**4.** *See Furia v. Furia*, 638 A.2d 548, 553 (R.I. 1994) (*Furia I*) (holding that "depending on the equitable distribution by the Family Court, [the ex-spouse] may not have to wait until [plaintiff] retires to begin [to receive] the value of the benefits he would receive if she [had retired]"), which was remanded to the Family Court and subsequently appealed to the Supreme Court again in *Furia v. Furia*, 692 A.2d 327, 328–29 (R.I.1997) (*Furia II*) (expanding the holding in *Furia I* to hold that the "proper distribution of plaintiff's pension" was a monthly payment of one-half the amount defendant would have received had plaintiff chosen to retire, not one lump sum payment, as a "fair allocation of this marital asset").

**5.** *See Bianchini v. Bianchini*, 76 R.I. 30, 35, 68 A.2d 59, 62 (1949) (holding that when the trial justice failed to pass on the facts of the case, "taking into consideration all the facts and circumstances in evidence[,]" he did not exercise his sound judicial discretion, and in failing to do so, erred); *see also Owens v.*

The plaintiff argues that the trial justice failed to exercise her discretion to employ her "preferred method" of distributing the pension – viz, at the time of Jan's *actual* retirement, rather than at the time his pension vests. We agree. There is no single prescribed method of pension distribution in this circumstance. Rather, the decision about which method is most appropriate involves an exercise of discretion by the trial justice in consideration of the unique circumstances of each case.

In *Furia I*, a case that the trial justice relied on, we were called upon to answer a certified question from the Family Court about whether a nonparticipatory spouse may receive his or her share of the employee-spouse's pension benefits before the employee-spouse retires, "or must he wait until his spouse actually retires and receives pension benefits?" *Furia I*, 638 A.2d at 550. We held that there is no right to the pension benefits until the participating spouse retires and begins collecting his or her pension. *Id.* at 552. However, we also declared "that the nonparticipatory spouse is *not necessarily* required to wait to collect the *value* of the pension benefits but is required to wait until the employee/spouse retires in order to receive *actual* pension benefits." *Id.* at 553 (emphases added.) We noted that the "Family Court is empowered to craft an equitable distribution of the marital property, including the pension plan * * * [and that] *depending on the equitable distribution* by the Family Court, [the noncontributing spouse] *may* not have to wait until [the contributing spouse] retires to begin collecting the value of the benefits he would receive if she did retire." *Id.* (Emphases added.)

Payless Cashways, Inc., 670 A.2d 1240, 1245 (R.I.1996) (holding that the trial justice erred when he "failed to exercise his discretion

On remand, as we described in *Furia v. Furia*, 692 A.2d 327, 328 (R.I.1997) (*Furia II*), the Family Court justice awarded the non-participating spouse one-half of the actuarial value of his spouse's pension. We reversed and held that under the circumstances of *that particular case*, a lump sum payout would be inequitable and, in the context of that case, the proper distribution was (1) a monthly payment to defendant in the amount he would have been entitled to receive if plaintiff had chosen to retire when she became eligible and (2) one-half of her actual pension after she retires and begins receiving pension benefits. *Id.* at 328–29.

Finally, in *Schaffner v. Schaffner*, 713 A.2d 1245, 1249 (R.I.1998), we outlined three possible methods for dividing marital retirement benefits, all within the framework that the selection of a distribution method was left to the discretion of the trial justice. This determination depends on the facts and circumstances of the particular case. *Id.* at 1249–50.

This Court has never held that in performing an equitable distribution of marital assets a Family Court justice is compelled to order payment of the marital portion of a contributing spouse's pension benefits at the time he or she becomes eligible for retirement. Rather, this decision rests within the sound discretion of the trial justice in deciding the equitable distribution of the marital estate. We are satisfied that the trial justice erred when she failed to exercise her discretion in this case.

Accordingly, we vacate in part the decision pending entry of final judgment and remand this case to the Family Court with directions to determine the appropriate

* * * by erroneously determining that his individual decision making had been legislatively shackled").

method for distributing the plaintiff's pension.

Justice FLAHERTY did not participate.