**Jan C. HAGOPIAN**

v.

**Erin L. HAGOPIAN.**

No. 2007–216–Appeal.

Supreme Court of Rhode Island.

Dec. 5, 2008.

Lauren E. Jones, Providence, for Plaintiff.

David E. Revens, Warwick, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 29, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and examining the parties' memoranda, we are satisfied that cause has not been shown and we shall decide this appeal without further briefing and argument. We affirm the order of the Family Court.

## Facts and Travel

This contentious litigation began three years ago, when plaintiff, Jan C. Hagopian (Jan or plaintiff), and defendant, Erin L. Hagopian (Erin or defendant),[1] were divorced after fourteen years of marriage. For the second time since then, plaintiff asks this Court to vacate the trial justice's order concerning when he shall begin paying to defendant her portion of his unvested and noncontributory pension.

We initially discussed the facts underlying this case in an order entered on January 25, 2007. *See Hagopian v. Hagopian,* 916 A.2d 761, 761–62 (R.I.2007) (mem.) (*Hagopian I*). In sum, the parties were divorced on the grounds of irreconcilable

---

1. Although we shall refer to the parties by their first names, we mean no disrespect.

differences that caused the irremediable breakdown of the marriage. *Id.* at 761. One of several disputes surrounding the divorce was the distribution of Jan's pension from the state police. *Id.* at 761–62.

Under G.L.1956 § 42–28–22,[2] Jan, as a Rhode Island State Police Officer, was eligible to retire on September 6, 2006, after twenty years of service, and was required to retire in 2011, after twenty-five years. In deciding the equitable distribution of the marital estate, the trial justice found that, in accordance with our decision in *Furia v. Furia*, 638 A.2d 548 (R.I.1994), Jan was required to distribute the value of Erin's marital share of his pension benefits when he became eligible to retire, rather than when he actually retired. *Hagopian I*, 916 A.2d at 762. Jan appealed the trial justice's decision pending entry of final judgment, arguing that the trial justice erred as a matter of law when she failed to exercise her discretion in determining the distribution date of the martial portion of his pension. *Id.* We agreed and held that the trial justice's decision ordering the equitable distribution of the marital estate is an exercise of discretion that must be based upon the unique circumstances of the case. *Id.* at 763. Accordingly, we vacated that portion of the trial justice's decision pending entry of final judgment and remanded the case to the Family Court "with directions to determine the appropriate method for distributing the plaintiff's pension." *Id.* at 763–64.

On February 1, 2007, just seven days after our order and without prior notice to the parties, the trial justice issued a written decision in which she reaffirmed her earlier ruling that Erin was to receive monthly payments representing the value of her share of Jan's pension starting on the date that Jan was eligible to retire, and would receive the actual pension benefits only when Jan retired. The trial justice noted that, in view of the totality of the circumstances, "the level of animus between [the] parties was palpable," such that "if either party were allowed to exert any control over the date of distribution of any of the marital assets, a grave injustice could occur." It appears that Jan's pension was the most significant marital asset.

The trial justice subsequently entered an order that reflected her findings. She noted that "[t]he reasoning and analysis of the *Furia* decision was certainly helpful in fashioning a method of distribution that would achieve the fairest allocation of the marital asset, but at no time did this Court believe that it had no other option available to it." Furthermore, the trial justice determined that Jan's recommendations for the proper allocation of his pension were not equitable under the circumstances of the case. Jan subsequently filed this appeal.

Meanwhile, Jan retired in May 2008. According to plaintiff's counsel, the value of payments currently at stake, which have accrued from September 2006 to May

---

**2.** General Laws 1956 § 42–28–22, as amended by P.L.1991, ch. 174, § 3, states in pertinent part:

"(a) Whenever any member of the state police has served for twenty (20) years, he or she may retire therefrom or he or she may be retired by the superintendent with the approval of the governor, and in either event a sum equal to one-half (1/2) of the whole salary for the position from which he or she retired determined on the date he or she receives his or her first retirement payment shall be paid him or her during life.

"* * *

"(h) Any other provision of this section notwithstanding, any member of the state police other than the superintendent of state police, who has served for twenty-five (25) years or who has attained the age of sixty-two (62) years, whichever shall first occur, shall retire therefrom."

2008, is $32,000. Jan has not made these payments.[3]

## Analysis

Before this Court, Jan argues that the trial justice once again failed to exercise her discretion in distributing his pension benefits. According to plaintiff, the trial justice merely justified or clarified her original decision. To support his argument, plaintiff directs our attention to the trial justice's decision in which she admitted that her "original decision was not artfully drawn," and further wrote that "[t]he court regrets not being clearer in its decision and welcomes this opportunity to clarify its position." In short, plaintiff argues that the trial justice disregarded this Court's mandate that required her to exercise her discretion in determining the appropriate method of distributing plaintiff's pension. Alternatively, in the event that this Court concludes that the trial justice exercised her discretion, plaintiff asserts that she abused it. We respectfully disagree.

## Use of Discretion

■ We previously have stated that a lower court "has no power or authority to deviate from the mandate issued by an appellate court." *RICO Corp. v. Town of Exeter*, 836 A.2d 212, 218 (R.I.2003) (quoting *State v. Collier*, 263 Kan. 629, 952 P.2d 1326, 1331 (1998)). The mandate rule "provides that a lower court on remand must implement both the *letter* and *spirit* of the [appellate court's] mandate, and may not disregard the explicit directives of that court." *Id.* (quoting *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir.2002)).

In our judgment, the trial justice adhered to the mandate that we issued in *Hagopian I*. Although she reaffirmed her original decision, she clearly demonstrated that her ruling was based on the totality of the circumstances presented by the evidence. The trial justice observed the demeanor of the parties from the bench and detected such a high level of hostility as to convince her that "a grave injustice could occur" if Jan unilaterally controlled the distribution date of his pension, which she characterized as a "hotly contested" issue. The plaintiff's contention that the trial justice merely clarified her original decision is therefore without merit. We also note that we did not instruct the trial justice to conduct further proceedings or consider additional evidence, nor are we persuaded that such actions were necessary. Accordingly, we are satisfied that the trial justice exercised her discretion in accordance with our mandate.

## Proper Exercise of Discretion

■ Jan alternatively asserts that the trial justice's order that required plaintiff to pay Erin from the date of his eligibility to retire was an abuse of discretion. Once again, we disagree.

■ A trial justice's decision concerning the equitable distribution of property in a divorce action involves three phases: "(1) determining which assets are marital property; (2) considering the factors set forth in G.L.1956 § 15–5–16.1(a); and (3) distributing the property." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1277 (R.I.2007); *Horton v. Horton*, 891 A.2d 885, 889 (R.I. 2006); *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1096 (R.I.2005); *Stephenson v. Stephenson*, 811 A.2d 1138, 1141 (R.I. 2002). This Court accords deference to the factual findings made by the trial justice "unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *DeAngelis*, 923 A.2d at 1277 (quoting *Stephenson*, 811 A.2d at 1141).

---

**3.** We note that these facts were not before the trial justice.

Additionally, the distribution of marital assets will not be overturned unless the trial justice abused his or her discretion. *Id.*

First, Jan attempts to distinguish this case from our decision in *Furia*, in which we held that when ordering the equitable distribution of the marital property, the Family Court may permit the nonemployee spouse to collect the value of a pension plan that he or she would receive if his or her spouse had retired. *Furia*, 638 A.2d at 553. We reasoned that the employee spouse should not have unilateral authority over the distribution date of his or her spouse's property through the timing of retirement if the Family Court decided equitably to award the nonemployee spouse a share of the pension. *Id.* We did not, however, hold that this method of distribution was limited to situations in which the employee spouse was not subject to a mandatory retirement date. In the present case, Jan had the power to deprive Erin of her portion of his pension benefits for five years, a significant period. In light of the trial justice's findings about the ill will between the parties, we conclude that she did not abuse her discretion in this instance.

The plaintiff next argues that the trial justice's decision will work a financial hardship on him. He reinforces this assertion with a mathematical calculation illustrating that after taxes, child support, and pension allocations, his $80,000 per year income—a figure that he assumes—will be reduced to less than $25,000 a year. The defendant contends that these numbers are dubious, were not presented to the trial justice, and, therefore, should not be considered by this Court on appeal.

We note that plaintiff did not provide us with a transcript of the evidentiary hearings before the trial justice. "The deliberate decision to prosecute an appeal without providing the Court with a transcript of the proceedings in the trial court is risky business." *731 Airport Associates, LP v. H & M Realty Associates, LLC*, 799 A.2d 279, 282 (R.I.2002). "Unless the appeal is limited to a challenge to rulings of law that appear sufficiently on the record and the party accepts the findings of the trial justice as correct, the appeal must fail." *Id.* The partial record in this appeal fails to provide us with even a suggestion that these numerical figures were brought to the trial justice's attention or argued during plaintiff's case-in-chief. Thus, in accordance with our raise-or-waive rule, we will not address this argument. *See State v. Bido*, 941 A.2d 822, 828–29 (R.I. 2008) ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.").

Finally, Jan lists two other reasons why, in his view, the trial justice's distribution order amounts to an abuse of discretion: he posits (1) that the order will effectively grant Erin more than 50 percent of the marital portion of his pension and (2) that the parties, who were fifty years of age at the time Jan became eligible to retire, were not at or near the "usual" retirement age.[4] In our opinion, these contentions do not warrant reversal. The trial justice undoubtedly was concerned about the parties' malevolent relationship, as evidenced by their conduct during the marriage. Moreover, Erin's job cleaning houses af-

---

**4.** The plaintiff also suggests that the trial justice's order made "a *sub silentio* award of alimony," contrary to her original decision denying such payments to defendant. However, plaintiff fails to provide us with an adequate discussion on this point in his brief. As we have stated before, "a mere passing reference to an argument is insufficient to merit appellate review." *DeAngelis v. DeAngelis*, 923 A.2d 1274, 1282 n. 11 (R.I.2007) (citing *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002)).

forded her little opportunity for future advancement and acquisition of capital assets, whereas Jan, as a state police officer and an experienced carpenter, had a greater earning capacity.[5] We are hard-pressed to find an abuse of discretion by the trial justice, whose decision was based on the evidence in this case.

## Conclusion

Accordingly, we hold that the trial justice properly exercised her discretion in accordance with our mandate. For these reasons, we affirm the order of the Family Court, to which the papers in this case may be remanded.

Justice FLAHERTY did not participate.

5. We also are satisfied that the trial justice's analysis fell within the purview of the statutory considerations listed in G.L.1956 § 15–5–16.1(a), which states:

"(a) In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:

"(1) The length of the marriage;

"(2) The conduct of the parties during the marriage;

"(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;

"(4) The contribution and services of either party as a homemaker;

"(5) The health and age of the parties;

"(6) The amount and sources of income of each of the parties;

"(7) The occupation and employability of each of the parties;

"(8) The opportunity of each party for future acquisition of capital assets and income;

"(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;

"(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;

"(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and

"(12) Any factor which the court shall expressly find to be just and proper."